FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV 23  PM 3:03

LORETTA G. WHYTE
            CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: VIOXX | * MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | * |
| | * SECTION: L(3) |
| | * |
| | * JUDGE FALLON |
| | * MAG. JUDGE KNOWLES |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

THIS DOCUMENT RELATES TO
*Felicia Garza, et al. v. Michael D. Evans, M.D., et al.*

### ORDER AND REASONS

Pending before the Court is Plaintiffs' Motion to Remand. For the following reasons, the motion is GRANTED.

**I.   FACTS**

This a medical malpractice/products liability case arising out of the death of Leonel Garza, Sr. During the spring of 2001, cardiologists Dr. Michael D. Evans and Dr. Juan D. Posada ("Defendant Doctors"), who are citizens of Texas, treated Mr. Garza for a heart condition. In the course of this treatment, Defendant Doctors prescribed Mr. Garza Vioxx. Vioxx was designed, manufactured, and marketed by Merck & Co. Inc. ("Merck"), which is a citizen of New Jersey. On April 21, 2001, while still being treated with Vioxx, Mr. Garza died of a heart attack.

On March 10, 2003, the Plaintiffs, the survivors of Mr. Garza and citizens of Texas, initiated this action in the 229th Judicial District Court of Starr County, Texas. Plaintiffs

asserted various products liability theories against Merck. In addition, Plaintiffs also asserted negligence and products liability claims against Defendant Doctors.

On March 17, 2003, Merck was served with a copy of the Plaintiffs' Original Petition. On April 16, 2003, Merck removed this case to the Southern District of Texas contending that the Defendant Doctors were improperly joined to defeat diversity jurisdiction. On May 16, 2003, Plaintiffs moved to remand.

To support their remand motion, Plaintiffs claimed that they asserted three viable legal theories against the Defendant Doctors and, as such, the Defendant Doctors were not improperly joined. First, the Plaintiffs asserted that they had stated a negligence claim against the Defendant Doctors because the Defendant Doctors negligently prescribed Vioxx to Mr. Garza when they knew or should have known of an adverse risk of heart attack from the drug. Second, Plaintiffs asserted that they had stated a claim against the Doctor Defendants based on a theory of negligent misdiagnosis of Mr. Garza's symptoms. Third, Plaintiffs asserted that they had stated various products liability theories against the Defendant Doctors.

In support of the two negligence theories, Plaintiffs attached affidavits from two medical experts—Dr. Simonini and Dr. Bush. Dr. Simonini claimed that the Defendant Doctors breached the applicable standard of care by negligently dispensing Vioxx to Mr. Garza in the face of known cardiac risks and by negligently misdiagnosing Mr. Garza's symptoms. Dr. Bush claimed that the Defendant Doctors negligently misdiagnosed Mr. Garza's symptoms, but did not render any opinion concerning the negligent dispensation theory. On July 31, 2003, the Southern District of Texas remanded the case concluding that the Plaintiffs had stated a potentially viable negligence claim against the Defendant Doctors.

2

On April 23, 2004, after the Southern District of Texas remanded the case, the parties entered into an Agreed Order Setting Jury Trial, which provided for a Monday, November 8, 2004 trial setting and an alternative trial date of Monday, February 14, 2005.

On August 21, 2004, Merck filed a Motion to Adopt the February 14, 2005 trial setting. This motion was granted by the 229th Judicial District Court of Starr County on September 15, 2004. The Plaintiff asserts that this Motion To Adopt was Merck's first continuance.

On September 30, 2004, Merck recalled Vioxx based on the findings in the APPROVe study, which sought to determine whether Vioxx was a viable treatment for colon polyps. Based on the findings of the APPROVe study, Merck filed a second motion to continue on October 22, 2004.

On December 9, 2004, Merck took the deposition of Dr. Simonini, the expert cardiologist whose affidavit the Plaintiffs submitted to the Southern District of Texas with its motion to remand. In his affidavit, Dr. Simonini testified that the Defendant Doctors had acted negligently because a reasonable and prudent physician would have known of the risks associated with Vioxx and would not have dispensed Vioxx to Mr. Garza. In addition, Dr. Simonini also testified that the Defendant Doctors had negligently misdiagnosed Mr. Garza's condition. At his deposition, however, Dr. Simonini changed his position and refused to attribute any blame to the Defendant Doctors.

On January 12, 2005, Merck filed its third motion to continue. Under Texas law, attorneys elected to the state legislature are afforded the benefit of a "legislative continuance," which allows state legislators to push back their civil trials until thirty days after the legislature adjourns. The "legislative continuance" only applies if the attorney legislator is hired at least

thirty days prior to the commencement of trial.

The Texas Legislature convened on Tuesday, January 11, 2005. On Wednesday, January 12, 2005, just two days prior to the thirty day deadline regarding legislative continuances, Merck filed a Notice of Appearance adding State Senator Juan Hinojosa as counsel. On January 13, 2005, after some local media exposure, Senator Hinojosa withdrew the motion to continue alleging that it was signed by mistake.

On January 14, 2005, Merck filed its fourth motion to continue. This time Merck added State Representative Rene Oliveira as counsel. In addition, on the same date, Merck filed a supplemental motion to continue, which the Plaintiff's classify as Merck's fifth motion to continue.

On January 18, 2005, Merck filed its second notice of removal. On January 24, 2005, the Plaintiffs filed a motion to remand. A hearing on this motion was set for February 24, 2005. On February 16, 2005, however, the Judicial Panel on Multidistrict Litigation ("Panel") issued a conditional transfer order in this case. On June 20, 2005, the Panel issued a final transfer order transferring this case to the Eastern District of Louisiana as part of MDL 1657.

## II.   MOTION TO REMAND

In its second notice of removal, Merck asserted that the Plaintiffs no longer had any viable causes of action against the Defendant Doctors. On December 17, 2004, the Plaintiffs filed a Second Amended Original Petition in which they dropped their previous allegations that the Defendant Doctors were liable for negligent misdiagnosis. Additionally, the Plaintiffs had previously dropped their products liability claims against the Defendant Doctors. Thus, at present and at the time of the second notice of removal, the only remaining claim against the

Defendant Doctors was the negligent dispensation claim. Merck claims that the Plaintiffs have no possibility of recovery based on the negligent dispensation claim because Dr. Simonini, the Plaintiffs' expert regarding negligent dispensation, changed his testimony at his deposition and asserted that the Defendant Doctors were not negligent.

In addition, Merck claims that the one year time limit for diversity removals under section 1446(b) of title 28 of the United States Code should be equitably tolled in this case. Based upon *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003), Merck asserts that the one year time limit should be equitably tolled because the Plaintiffs improperly joined the Defendant Doctors to manipulate the forum. This claim is based on the change of Dr. Simonini's testimony and the Plaintiffs' voluntary dismissal of their other two theories of liability—all of which occurred more than one year after the commencement of the action.

The Plaintiffs assert that the one year time limit to section 1446(b) prevents Merck from removing this case and that the facts of this case do not warrant the equitable tolling of section 1446(b)'s one year time limit. Second, even if the one year time limit of 1446(b) is equitably tolled, the Plaintiffs argue that they still have a possibility of recovery against the Defendant Doctors and, as such, the Defendant Doctors are not improperly joined and their citizenship should be taken into account for diversity jurisdiction purposes.

### III.   LAW AND ANALYSIS

If a case is not initially removable at the time of filing, a defendant may remove the case within thirty days of receipt of an amended pleading, motion, order, or other paper that indicates that the case is removable. 28 U.S.C. § 1446(b). A case, however, may not be removed on the basis of diversity jurisdiction more than one year after the commencement of the action. *Id.*

Section 1446(b)'s one year time limit was enacted to prevent the removal of an action wherein substantial progress had been made in state court. *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 886-87 (5th Cir. 1998).

The Plaintiffs filed this case on March 10, 2003. Merck removed this case on January 18, 2005, well beyond the one year time limit. Merck concedes that the plain language of section 1446(b) precludes the removal of this action, but asserts that the principle of equitable tolling permits it to remove this case after the one year time limit.

In *Tedford v. Warner-Lambert Co.*, the Fifth Circuit held that section 1446(b) is subject to an exception of equitable estoppel. 327 F.3d 423, 426 (5th Cir. 2003). In *Tedford*, the plaintiff filed suit against several defendants, including one non-diverse defendant, in Texas state court. *Id.* at 424. Through discovery, Warner-Lambert, a defendant in the case, learned that the non-diverse defendant was not a proper party to the suit. *Id.* at 425. As such, Warner-Lambert informed the plaintiff of its intent to remove the case based on diversity jurisdiction. *Id.* A mere three hours later and before the notice of removal was filed, the plaintiff added another non-diverse defendant to prevent diversity jurisdiction and defeat removal. *Id.* Soon thereafter, without taking any discovery from the newly added non-diverse defendant and without providing the newly added defendant with proper notice under the Texas Medical Liability and Insurance Improvement Act, the plaintiff signed and postdated a notice of non-suit as to the newly added non-diverse defendant before the expiration of the one year time limit, but did not file the notice until after the one year time limit passed. *Id.* Ten days after the expiration of the one year time limit, Warner-Lambert removed the case to federal court. *Id.* The Fifth Circuit found that the plaintiff's blatant forum manipulation and the defendant's vigilance in seeking removal justified

the application of an equitable exception of estoppel. *Id.* at 428.

In addition to the Fifth Circuit in *Tedford*, other courts have equitably tolled section 1446(b)'s one year time limit based upon showings of both the plaintiff's forum manipulation and the defendant's rapid response in protecting his removal rights.[1] For example, in *Morrison v. National Benefit Life Ins. Co.*, where removal was permitted, the plaintiffs made a straight-forward admission of forum manipulation, and the defendants removed the case eight days after learning that the case fell within federal diversity jurisdiction. 889 F.Supp. 945, 947 (S.D. Miss. 1995). In *Kinabrew v. Emco-Wheaton, Inc.*, where removal was permitted, the plaintiffs deliberately withheld service of process on the defendant until after the one year period had expired, and the defendants removed the case within one month of service of process. 936 F.Supp. 351, 352-53 (M.D. La. 1996). In *Ardoin v. Stine Lumber Co.*, where removal was permitted, the plaintiffs filed suit against both diverse and non-diverse defendants. 298 F.Supp.2d 422, 427 (W.D. La. 2003). After one year had elapsed from the commencement of the action, the plaintiffs strategically dismissed the non-diverse defendants. *Id.* On the same day that the last non-diverse defendant was dismissed, the remaining defendants filed a notice of removal. *Id.* At oral argument on the plaintiff's motion to remand, the plaintiffs failed to articulate any justifiable reason for dismissing the non-diverse defendants more than one year after the initial filing of suit. *Id.* Accordingly, the court found that the plaintiffs had participated in forum manipulation and that the defendants had sought to vigilantly protect their removal rights. *Id.* at 429.

---

[1] For a list of cases regarding the equitable tolling of section 1446(b)'s one year time limit, see 14C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3732 n.82 (3d ed. 1998 & Supp. 2005).

In *Tedford*, *Morrison*, *Kinabrew*, and *Ardoin*, the courts equitably tolled section 1446(b)'s one year time limit because all the plaintiffs engaged in clear instances of forum manipulation and all the defendants rapidly removed the cases. Likewise, Merck argues that the Plaintiffs have engaged in forum manipulation. Merck contends that Dr. Simonini's change in testimony and the Plaintiffs' dismissal of two of their three theories of liability against the Defendant Doctors amounts to forum manipulation and justifies the application of the *Tedford* equitable exception.

Despite the Fifth Circuit's holding in *Tedford*, the party invoking removal jurisdiction bears the burden of establishing jurisdiction. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997). Merck fails to meet this burden.

Even though one of the Plaintiffs' expert changed his opinion and the Plaintiffs have voluntarily dismissed two of their three causes of action against the Defendant Doctors, the facts of this case do not rise to the level of *Tedford* or the cases leading to and flowing from it. Unlike *Tedford*, the Plaintiffs have complied with the Texas Medical Liability and Insurance Improvement Act by providing the Defendant Doctors with notice letters. The Plaintiffs have not abandoned their claims against the Defendant Doctors; but, instead, they have propounded formal, written discovery to the Defendant Doctors and have taken the deposition of Dr. Evans. In addition, the Plaintiffs have defended and defeated the Defendant Doctors's Motion for Summary Judgement. Moreover, the Plaintiffs have even cross-examined two of Merck's medical experts regarding Dr. Evans' opinion that he would continue to prescribe Vioxx to patients with known cardiovascular risks even after the FDA instructed Merck to include warnings in Vioxx packages in 2002. Lastly, Dr. Bush, the Plaintiffs' other medical expert, has

submitted a second affidavit in which he testifies that the Defendant Doctors did negligently dispense Vioxx to Mr. Garza. All of these facts lead to the conclusion that the Plaintiffs have actively pursued their claims against the Defendant Doctors in the hopes of recovery, not in the hopes of evading federal jurisdiction. Accordingly, the facts of this case simply do not rise to the level of *Tedford, Morrison, Kinabrew,* or *Ardoin.*

Furthermore, Merck has not been vigilant in asserting its rights. Dr. Simonini's deposition took place on December 9, 2004. Merck filed its second notice of removal on January 18, 2005. In stark contrast to the defendants in the previously mentioned cases, Merck waited over a month to remove its case to federal court. This unexplained delay does not amount to the vigilant protection of removal rights.

Moreover, even if section 1446(b)'s one year time limit was not applicable to this case, Merck would have still been required to file its notice of removal within thirty days of Dr. Simonini's deposition. If a case is not initially removable, as this one was not, a defendant has thirty days to remove the case from the receipt of an amended pleading, motion, order, or other paper that indicates that the case is removable. 28 U.S.C. § 1446(b). A deposition is considered an "other paper." *Poole v. Western Gas Res.*, No. CIV.A.97-2929, 1997 WL 722958, at *2 (E.D. La. Nov. 18, 1997) (finding that there was no functional difference between a deposition and a deposition transcript and, as such, a deposition was considered an "other paper" under the holding of *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). *Contra Rivers v. Int'l Matex Tank Terminal*, 864 F.Supp. 556, 559 (E.D. La. 1994). Therefore, Merck would have been required to remove this case before January 18, 2005, even if section 1446(b)'s one year time limit did not apply.

Accordingly, since the Plaintiffs did not engage in blatant forum manipulation, Merck did not vigilantly assert its removal rights, and this action has already made substantial progress in state court, this case is not subject to the *Tedford* equitable exception of estoppel. Since the Court has found that this case is not subject to the equitable exception of estoppel, it is unnecessary to reach the issue of whether the Plaintiffs have a possibility of recovery.

As an MDL Court, this Court has been charged with the task of presiding over thousands of cases involving hundreds of thousands of litigants. To promote the just and efficient conduct of these actions, the Court has previously indicated that it would deal with remand motions as a group in accordance with procedures to be determined at a future date. The Court is still committed to this plan.

The facts of the present case, however, were so exceptional that they justified the Court's taking earlier action. Merck's conduct in postponing the trial of this action can be classified as peculiar, at best. Regardless of the classification, the facts of the present case, unlike those of other cases pending before the Court, necessitate that the Court take action.

### III. CONCLUSION

For the reasons set forth above, IT IS ORDERED that the Plaintiffs' Motion to Remand is GRANTED and this matter is REMANDED to the 229th Judicial District Court of Starr County, Texas.

New Orleans, Louisiana, this __22nd__ day of __November__, 2005.

UNITED STATES DISTRICT JUDGE

10